IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

PHYLLIS J. BUCK BAKER,

    Plaintiff,

V.                                      CIVIL ACTION NO. 3:07-0380

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM ORDER

In this action, filed under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits, widow's insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed her applications on June 30, 2003, alleging disability commencing December 15, 2002,[1] as a consequence of a heart condition, high blood pressure, diabetes, and high cholesterol. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the

---

[1] At the hearing, plaintiff requested consideration of a closed period of disability from this date through July 2004 when she returned to work.

Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was fifty-nine years of age and had completed the tenth grade. Her past relevant employment experience consisted of work as a sales representative for a portrait company and a sales associate at a department store. In his decision, the administrative law judge determined that plaintiff suffers from hypertension, non-insulin dependent diabetes mellitus (NIDDM), depression and anxiety, impairments which he found severe. Though concluding that plaintiff was unable to perform her past work,[2] the administrative law judge determined that she had the residual functional capacity for a limited range of medium level work. On the basis of this finding, and relying on Rule 203.11 of the medical-vocational guidelines[3] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that the evidence provides substantial support for the Commissioner's decision. As the administrative law judge pointed out, plaintiff's alleged onset date is the date she stopped working to care for her terminally ill husband who died in May 2003. Her first record of treatment during the period under consideration is on April 8, 2003 when she saw Dr. Pack with complaints of dizziness, chest congestion, stress and chest pain. Her blood pressure was 200/100 and Dr. Pack diagnosed situational anxiety, hypertension and depression. He also prescribed medication for the anxiety and high blood pressure. Other conditions for which plaintiff was treated included non-insulin dependent diabetes, hyperlipdemia and shingles. She was referred

---

[2]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3.

to the Prestera Center for therapy and medication management by Dr. Pack,[4] beginning there on February 12, 2004. Plaintiff improved significantly on the medication Lexapro, and it was noted on August 11, 2004 she had returned to work and was last seen on November 8, 2004. She was officially discharged from treatment on March 22, 2005.[5]

Relying on a residual functional capacity assessment completed by one of the state agency medical advisors, the administrative law judge determined that, physically, plaintiff had the residual functional capacity for medium level work limited by a need to avoid climbing ladders, ropes or scaffolds or working at unprotected heights, around dangerous, moving machinery, temperature extremes or excessive dust, fumes or gases. Mentally, he found, consistent with the opinion and assessment of a medical expert in psychology, that plaintiff would have a "poor" ability (seriously limited but not precluded) in the areas of dealing with work stresses, maintaining attention and concentration and understanding, remembering and carrying out complex job instructions. The remaining areas of mental functioning were rated "good" (more than satisfactory) or "fair" (limited but satisfactory).

Plaintiff raises several objections to the administrative law judge's decision. First, she contends the finding of ability to perform medium level work is not supported by substantial evidence, particularly in light of the opinion expressed by Dr. Pack on a form he completed for the West Virginia Department of Health and Human Resources in furtherance of plaintiff's application

---

[4] While the administrative law judge noted at the hearing that Dr. Pack referred plaintiff to Prestera due to suicidal and homicidal ideation, it is apparent that he misread Dr. Pack's report wherein he indicates plaintiff had no suicidal or homicidal ideation.

[5] Plaintiff reported at the April 21, 2005 hearing she was continuing treatment at Prestera, but this statement is not supported by the documents from this facility.

for Medicaid. After an exam on June 19, 2003, Dr. Pack listed "major" diagnoses of hypertension, hyperlipdemia and palpitations with "minor" diagnoses of anxiety and a shoulder problem. He concluded that plaintiff was unable to perform any full-time job for at least one year.

The administrative law judge declined to give this opinion significant weight for several reasons. One factor listed by Dr. Pack in support of his opinion was that plaintiff's hypertension was not controlled. The administrative law judge observed that, while her blood pressure was high during this exam, other reports reflect much lower measurements with only an occasional high reading. He similarly noted she had no end organ damage from this condition. With respect to plaintiff's right shoulder, which Dr. Pack indicated would prevent her from lifting, the administrative law judge observed there were no complaints by plaintiff to this physician about a shoulder problem during any other office visits. Further, range of motion measurements recorded by Dr. Molano, who performed a consultative physical exam for the Commissioner, reflected full movement of both shoulders, and, in fact, of all areas tested.

A treating physician's opinion is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence" in the record.[6] While Dr. Pack is a treating physician, he had seen plaintiff only one other time prior to this assessment and clearly had not obtained "a longitudal picture of [her] impairment[s] ...," one of the factors that would cause a treating physician's opinion to be given more weight.[7]

---

[6] 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

[7] 20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii).

As noted, plaintiff's blood pressure did not remain at the significantly elevated level noted on the date of this exam, and a shoulder problem is not noted anywhere else in the record. Under such circumstances, and considering the evidence, the Court concludes that the administrative law judge's finding was in accord with the regulations and supported by the record.

Plaintiff also asserts that the administrative law judge erred in finding that a significant number of jobs existed which plaintiff could perform and that he did not properly take account of the combined effect of plaintiff's age and mental limitations in determining whether she could adjust to new jobs.

The administrative law judge posed a hypothetical question to the vocational expert containing all the limitations on plaintiff's ability to work he later found in his decision, including plaintiff's age, education and past work experience, her mental limitations and a statement that she "would do best with simple, single step instructions." While the vocational expert responded that plaintiff would be able to perform a "very reduced range" of medium, light and sedentary level jobs, he indicated that she could do twenty percent of the jobs at each level. He listed two jobs at the medium level representing a total of 55,400 jobs in the region where plaintiff lives and 620,000 in the nation; 37,500 light level jobs in the region, 278,500 in the nation; and 15,000 sedentary jobs in the region, 282,000 nationally. Clearly, these represent significant numbers of jobs.[8] This also represents an expert opinion that, even with plaintiff's age and mental limitations, she could adjust to work other than what she did in the past, and, as noted, she was in fact working as of August 2004. Also, the medical-vocational guidelines, which the administrative law judge used as a "framework" for making his determination about the availability of work, are designed to take into account

---

[8] 20 C.F.R. §§ 404.1566, 416.966.

abilities of workers to adjust to the various levels of work as they age. Considering these factors, the Court finds that plaintiff's arguments about her ability to perform other work are also unsupported.

Review of the record establishes to the Court's satisfaction that the administrative law judge's findings with respect to plaintiff's impairments, the resultant work-related limitations, the weight given various medical opinions, assessment of plaintiff's credibility and the vocational expert's testimony as to alternative work plaintiff could perform are supported by substantial evidence. Under such circumstances, the decision of the Commissioner must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: September 21, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE